UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                      :

JOSEPH MONDANO, as Parent and Natural Guardian of :
L.M., and JOSEPH MONDANO, Individually,           :
                                        :
                 Plaintiff,            :
                                        :
         -v-                    :                22 Civ. 7519 (JPC)
                                        :
                                        :            <u>OPINION AND ORDER</u>
DAVID C. BANKS, in his official capacity as the    :
Chancellor of the New York City Department of   :
Education, and the NEW YORK CITY DEPARTMENT :
OF EDUCATION                          :
                                        :
               Defendants.     :
                                        :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This action arises under the Individuals with Disabilities in Education Act, 20 U.S.C.

§§ 1400 *et seq.* ("IDEA"), a statute ensuring that "all children with disabilities have available to

them a free appropriate public education," *id.* § 1400(d)(1)(A).

      In 2019, L.M., a child with disabilities, was referred to a local committee on special

education.  Pursuant to the committee's recommendation, L.M. was placed in specialized classes

at a public school.  But soon after, L.M.'s parents unilaterally enrolled her in the International

Academy of Hope ("iHOPE"), a private school.  L.M.'s parents later sought payment from the

New York City Department of Education (the "DOE") for L.M.'s cost of attendance at iHOPE for

the 2020-2021 and 2021-2022 school years.  They prevailed in the administrative proceedings, and

the DOE did not appeal.  In April 2022, L.M.'s parents—without input from the school district—

withdrew L.M. from iHOPE and enrolled her in another private school, the International Institute

for the Brain ("iBRAIN").  A committee on special education convened at the end of May 2022

for an annual review of L.M.'s individualized educational program, and recommended, among other accommodations, L.M.'s placement in a specialized district school for the upcoming 2022-2023 school year.  Shortly thereafter, in early June 2022, L.M.'s parents decided once again to enroll L.M. at iBRAIN instead.  L.M.'s father, Joseph Mondano, then initiated administrative proceedings, challenging the adequacy of L.M.'s May 2022 IEP and requesting that the DOE fund L.M.'s attendance at iBRAIN both for the relevant portion of the 2021-2022 school year (April 2022 to June 2022) and for the 2022-2023 school year.

In July 2022, Mondano commenced the instant action against the DOE and David Banks, in his official capacity as the DOE's Chancellor, challenging certain of the decisions from the underlying administrative action.  The parties have cross-moved for summary judgment.  With respect to the 2021-2022 school year, Mondano contends that the DOE violated the IDEA's "stay-put" provision, 20 U.S.C. § 1415(j), by failing to fund L.M.'s cost of attendance at iBRAIN from April 2022 to June 2022, and challenges the underlying determinations that the DOE had no such obligation to do so.  With respect to the 2022-2023 school year, Mondano seeks reversal of an administrative officer's determination that the DOE's funding of L.M.'s attendance at iBRAIN for that year take the form of reimbursement, rather than direct payment.  Defendants counter that the DOE's obligations under the IDEA's "stay-put" provision for L.M.'s education during the 2021-2022 school year pertained only to L.M.'s attendance at iHOPE, and that the administrative officer properly determined with respect to the 2022-2023 school year that direct payment was inappropriate as relief in the absence of evidence of Mondano's inability to pay the costs upfront.

For the reasons below, Mondano's motion for summary judgment is granted to the extent he seeks reversal of the administrative decision on direct payment of L.M.'s cost of attendance at iBRAIN for the 2022-2023 school year and is otherwise denied, and Defendants' motion for

summary judgment is granted as to its obligations under the "stay-put" provision for the 2021-2022 school year and is otherwise denied.

## I. Background

### A.     The IDEA's Legal Framework

Congress enacted the IDEA with the purpose of "ensur[ing] that all children with disabilities have available to them a free appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To achieve this end, the IDEA requires state or local education agencies to provide each student with a disability an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.* ("*Burlington*"), 471 U.S. 359, 368 (1985)). "Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988) (citing 20 U.S.C. §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), 1415(b)(2)).  States thus must allow parents "to seek review of any decisions they think inappropriate." *Id.* at 312; *see* 20 U.S.C. § 1415(a) (requiring state education agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]").

"To meet these obligations and to implement its own policies regarding the education of disabled children, [New York] has assigned responsibility for developing appropriate IEPs to local

Committees on Special Education ('CSE'), the members of which are appointed by school boards or the trustees of school districts." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998) (citing N.Y. Educ. Law § 4402(1)(b)(1) (McKinney Supp. 1997-98) and *Heldman v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992)). "In developing a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F. 3d 105, 107-08 (2d Cir. 2007) (citing N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(ww)(3)(i)). Parents in New York may challenge the adequacy of their child's IEP by filing an administrative due process complaint and requesting a hearing before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). If dissatisfied with the IHO's decision, the aggrieved party may appeal that decision to a state review officer ("SRO"), whose decision "is final, and concludes the state administrative review." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002). And if still dissatisfied at that juncture, the aggrieved party may then bring a civil action in federal or state court. 20 U.S.C. § 1415(a)(i)(2)(A).

Given the often-protracted nature of these review proceedings, parents need not necessarily wait until their conclusion before seeking a more suitable educational placement for their child. Before or during the pendency of these proceedings, parents may unilaterally (that is, without the consent of state or local school officials) place their child in a private school—but they "do so at their own financial risk." *Burlington*, 471 U.S. at 374. Only if they ultimately prevail in the review proceedings—that is, by "satisfy[ing] a three-part test that has come to be known as the *Burlington-Carter* test"—may they be permitted to seek reimbursement of expenses arising from that unilateral placement. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526-27 (2d Cir. 2020); *see East Lyme Bd. of Educ.*, 790 F.3d at 454 ("[W]hen a parent rejects a stay-put placement

by unilaterally placing the child elsewhere, retroactive reimbursement for the unilateral placement is available, if at all, only through a FAPE claim."); *see also Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter* ("*Carter*"), 510 U.S. 7, 12 (1993).  Under the *Burlington-Carter* test, a parent must show: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement."  *Ventura de Paulino*, 959 F.3d at 526-27.  The Second Circuit has further determined that "where the equities call for it," direct payment—rather than reimbursement—may be an appropriate remedy under the *Burlington-Carter* framework.  *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 453-54 (2d Cir. 2014).

Parents' entitlement to reimbursement during the review process is governed by the IDEA's "pendency" or "stay-put" provision, 20 U.S.C. § 1415(j), which requires that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child."  *Ventura de Paulino*, 959 F.3d at 526.  Pendency disputes "generally focus[] on identifying the child's 'then-current educational placement,' as it is the only educational program the school district is obligated to pay for during" pendency.  *Id.* at 532 (quoting 20 U.S.C. § 1415(j)).  The IHO delineates the scope of the DOE's reimbursement obligations under the stay-put provision in an interim Order on Pendency—while the impartial hearing is still pending—or in a Finding of Facts and Decision ("FOFD")—once the impartial hearing has concluded.  *See Abrams v. Carranza*, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019) (explaining that "an IHO may hold a hearing and issue an Interim Order on Pendency . . . making findings concerning a student's pendency placement in advance of making final findings of fact and decision on her due process complaint").

"[G]iven the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (internal quotation marks omitted).  Accordingly, a parent seeking review of an IHO's pendency determination need not exhaust administrative remedies—*i.e.*, by appealing the order to an SRO—before seeking judicial review.  *See id.* ("Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."); *id.* ("We need not decide whether the exhaustion requirement is generally applicable to all claims arising under the IDEA because assuming *arguendo* that it is, an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite.").

## B.    Factual and Procedural Background[1]

Mondano is the parent of L.M., a minor with disabilities stemming from traumatic brain injury.  Administrative Record at 45.  L.M. has been diagnosed with a host of neurological disorders (including cerebral palsy, static encephalopathy, spastic diplegia, and global developmental delay), as well as bilateral retinal detachment.  *Id.* at 11.  L.M. is nonverbal, legally blind, and requires mobility aids.  *Id.* at 11-12.

In April 2019, L.M. was referred to the local CSE and placed in a district school.  *Id.* at 12. Shortly after, Mondano unilaterally enrolled L.M. at iHOPE, a private school, which she attended

---

[1] The following background facts are not in dispute and are drawn from the underlying administrative record, which was filed with the Court under seal on April 7, 2023, *see* Dkt. 23 ("Administrative Record").  On March 6, 2023, the Court waived the requirement under the Local Rules that the parties file Rule 56.1 statements in connection with their summary judgment motions.  Dkt. 19.

until April 2022.  *Id.* at 12-13.  In connection with L.M.'s placement at iHOPE, Mondano filed

due process complaints in July 2020 and July 2021, seeking from the DOE the costs of L.M.'s

attendance at iHOPE for the 2020-2021 and 2021-2022 school years, respectively.  *Id.*  The matters

were consolidated, and on October 19, 2021, an IHO determined that the school district had indeed

denied L.M. a FAPE and ordered the district to reimburse "and/or" directly fund L.M.'s placement

at iHOPE for both school years.  *Id.*; *see also id.* at 171-187 ("October 19, 2021 FOFD").  The

DOE did not appeal that decision.

On April 5, 2022, L.M.'s parents, through counsel from the Brain Injury Rights Group,

sent the DOE a letter, captioned "Ten Day Notice/Updated Notice of Placement."  *Id.* at 220-221

("April 5, 2022 Notice") (bold and all capitalization removed).  The April 5, 2022 Notice advised

that, starting on April 25, 2022, L.M.'s parents would be enrolling L.M. at iBRAIN for the

remainder of the 2021-2022 school year, but provided no explanation for that decision other than

"[a]t this time, due to [L.M.]'s current needs, Parents have no choice other than to enroll her at

iBRAIN, which Parents have identified as an appropriate placement for [L.M.]."  *Id.* at 220-221.

On May 31, 2022, a CSE convened for an annual review of L.M.'s IEP and determined that

L.M. continued to be eligible for special education services.  *Id.* at 13.  The CSE

recommended, among various other accommodations, a twelve-month program consisting of

special classes in a specialized district school.  *Id.*

On June 11, 2022, Mondano entered into an enrollment contract for L.M.'s attendance at

iBRAIN for the 2022-2023 school year.  *Id.* at 14.  Six days later, on June 17, 2022, Mondano

informed the DOE that he was rejecting the district's proposed program under the May 2022 IEP

because he had not received a prior written notice or a school location letter and that, accordingly,

he had been unable to obtain information sufficient to evaluate the district's proposed placement.

*Id.*; *see also id.* at 355-356.   He further expressed concern about the appropriateness of the recommended placement, and indicated that he "ha[d] no choice other than to enroll" L.M. at iBRAIN, which Mondano had deemed was an appropriate placement.   *Id.* at 356.   The DOE responded that Mondano's claim was "not appropriate for settlement," and that Mondano would be required to file a due process complaint notice if he wanted to pursue a unilateral placement. *Id.* at 14.

On July 6, 2022, Mondano filed such notice.   *Id.* at 163-169 ("July 6, 2022 Due Process Complaint Notice").   Mondano acknowledged therein that iHOPE was the "last-agreed upon placement" for pendency purposes pursuant to the October 19, 2021 FOFD, but explained that he came to "disagree with the placement at iHOPE" and was thus "entitled to a determination of what constitutes pendency for" L.M. for the 2021-2022 school year.   *Id.* at 164.   He alleged that iHOPE had failed to provide L.M. with "appropriate academic instruction" tailored to her skill, grade level, and behavior and social-emotional needs, and that iHOPE had not only disregarded L.M.'s parents' concerns but had gone "so far as to open a case with the Administration of Children's Services ('ACS') in retaliation for [the p]arents' disagreement with iHOPE's inappropriate instruction methods."   *Id.* at 165.   Mondano further challenged the appropriateness of the May 31, 2022 IEP on both procedural and substantive grounds.   *Id.* at 166-167.   He thus requested declarations that the DOE denied L.M. a FAPE during the 2021-2022 and 2022-2023 school years and that iBRAIN was an appropriate placement, and an order mandating that the DOE *directly fund*—not reimburse—L.M.'s iBRAIN tuition (and the costs of related services) for both of those school years.   *Id.* at 168.

On August 17, 2022, IHO Vandana Chak issued an interim Order on Pendency, denying retroactive payment of L.M.'s attendance at iBRAIN during the relevant portion of the 2021-2022

8

school year.  *Id.* at 398-408 ("August 17, 2022 Order on Pendency").  IHO Chak explained that

when L.M.'s parents challenged the adequacy of L.M.'s May 2022 IEP, the "then-current

educational placement" was iHOPE—not iBRAIN—as determined by the unappealed October 19,

2021 FOFD.  *Id.* at 403-404; *see id.* at 403 ("Moreover, a prior unappealed IHO decision may

establish a student's current education placement for purposes of pendency." (citing *Student X v.

N.Y.C. Dep't. of Educ.*, No. 07 Civ. 2316 (NGG), 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30,

2008)).  In rejecting Mondano's argument that iHOPE was "unavailable" as a placement for L.M.,

IHO Chak explained that "Section 1415(j) makes no exception for cases in which the 'then current

education placement' is not functionally available."  *Id.* at 404.  The IHO further instructed:

> If Parent wants the relief of change iHOPE to iBRAIN, which is what they did, then
> Parent should have requested such relief under section 1415(i)(2)(B)(iii) from [a]
> court.
>
> [A] [p]reliminary injunction entered under section 1415(i)(2)(B)(iii) is not
> automatic.  Parents would have the much higher burden to show the justification
> for a preliminary injunction.

*Id.* at 406.[2]

On September 2, 2022, Mondano commenced the instant action under Section 1415(j),

seeking, among other relief, a preliminary injunction "(1) overturn[ing] IHO Chak's Pendency

order in its entirety, and (2) order[ing the] DOE to fund L.M.'s placement at iBRAIN for the 2022-

2023 [school year] until the underlying administrative proceedings are resolved."  Dkt. 1 ("Orig.

Compl.") ¶ 11.  Mondano insisted that "[s]ince pendency has the effect of an automatic injunction,

---

[2] The IDEA provision referred to here as "Section 1415(i)(2)(B)(iii)" empowers a
reviewing court "in any action brought under this paragraph" to grant "such relief as the court
determines is appropriate," pursuant to its equitable authority.  In the version of 20 U.S.C. § 1415
effective from April 29, 1999 to June 30, 2005, this language was found in Section
1415(i)(2)(B)(iii), but in the current version of the statute, effective as of July 1, 2005, the language
is included in Section 1415(i)(2)(C)(iii).

[he] need not meet the traditional requirements for injunctive relief, such as a likelihood of success on the merits, irreparable harm, or a balancing of the hardships," but he added "if the Court finds [he] must meet these standard requirements, it is submitted [he] meets such requirements." *Id.* ¶¶ 10-11.

On October 4, 2022, after conducting the due process proceedings concerning L.M.'s May 2022 IEP, IHO Chak issued a FOFD. Administrative Record at 44-70 ("October 4, 2022 FOFD"). The IHO found that, at the time L.M.'s parents gave notice on April 5, 2022 indicating their intent to enroll their daughter at iBRAIN for the remainder of the 2021-2022 school year, there existed no IEP dispute for that school year, and that "no order of the court had been obtained to change the unilateral placement from iHOPE to iBRAIN." *Id.* at 60-61. Once again reiterating the inappropriateness of altering a unilateral placement under Section 1415(j), IHO Chak reaffirmed her determination that pendency lay in iHOPE for the 2021-2022 school year. *Id.* The IHO further found that the DOE had offered L.M. a FAPE for the 2022-2023 school year, and thus denied Mondano's request that the DOE fund L.M.'s costs of attendance at iBRAIN. *Id.* at 63-70.

On November 14, 2022, Mondano filed a notice requesting administrative review of both IHO Chak's August 17, 2022 Order on Pendency and the October 4, 2022 FOFD. *Id.* at 92-101. On January 9, 2023, SRO Justyn Bates issued a decision, which, among other findings, (1) affirmed IHO Chak's pendency determination as to the 2021-2022 school year and (2) reversed the IHO's determination that L.M. had been offered a FAPE for the 2022-2023 school year. *Id.* at 10-42 ("January 9, 2023 SRO Decision").

In reaching the former determination, SRO Bates explained that under clear Second Circuit precedent, Mondano was precluded from enrolling L.M. at iBRAIN and thereafter invoking the stay-put provision "to force the district to pay for the student's placement at iBRAIN on a pendency

basis." *Id.* at 25 (discussing *Ventura de Paulino*, 959 F.3d at 534).  SRO Bates added that Mondano "may seek a preliminary injunction requesting a change in [L.M.]'s education placement, an injunction for which the parent 'bears the burden of demonstrating entitlement.'"  *Id.* at 26 (quoting *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302 (4th Cir. 2003)).

In connection with the latter determination, SRO Bates found that L.M. had been procedurally denied a FAPE—given the DOE's failure to timely provide Mondano with school assignment information under the May 2022 IEP— and that iBRAIN was an appropriate unilateral placement.  *Id.* at 30-38.  SRO Bates thus ordered the DOE to reimburse the costs of the L.M.'s attendance at iBRAIN, including costs of tuition and related services, "upon proof of payment." *Id.* at 42.  In so ordering, SRO Bates rejected Mondano's request that the DOE fund L.M.'s attendance at iBRAIN for the 2022-2023 school year "by directly paying iBrain, rather than by reimbursing [Mondano] for the out-of-pocket costs of [L.M.]'s tuition."  *Id.* at 38.  SRO Bates recognized that courts have "order[ed] a school district to make retroactive tuition payment directly to a private school" where "the parents, due to a lack of financial resources, have not made tuition payments but are legally obligated to do so."  *Id.* at 39 (citing *Mr. & Mrs. A. v. N.Y.C. Dep't. of Educ.*, 769 F. Supp. 2d 403, 428 (S.D.N.Y. 2011) and *E.M.*, 758 F.3d at 453).  But finding that Mondano had failed to meet his burden of production and persuasion with respect to his financial inability to pay the costs upfront, SRO Bates determined that the appropriate relief was to order reimbursement upon proof of payment.  *Id.* at 39.

Mondano then amended the Complaint filed in the instant case to include claims seeking partial reversal of that March 9, 2023 SRO Decision. Dkt. 21 ("Am. Compl.").  In the Amended Complaint, Mondano asks this Court (1) to reverse the finding in the interim August 17, 2022 Order of Pendency that Mondano was not entitled to funding for tuition at iBRAIN as part of

L.M.'s pendency, (2) to reverse a supposed finding in the January 9, 2023 SRO Decision that L.M. was provided a FAPE for the latter portion of the 2021-2022 school year,[3] and (3) to reverse the finding in the January 9, 2023 Decision that reimbursement for the cost of attendance at iBRAIN during the 2022-2023 school year was contingent upon a showing of proof of payment made by L.M.'s parents.  Am. Compl. at 17.  Mondano also seeks leave to file a motion for attorneys' fees and costs.  *Id.* at 18.  On March 23, 2023, Defendants answered.  Dkt. 22.

On April 21, 2023, Mondano moved for summary judgment, seeking an order "(1) finding that iBRAIN is L.M.'s pendency placement for the [2021-2022 school year[4]]; (2) directing Defendants to fund L.M.'s education at iBRAIN for the 2022-2023 [school year], inclusive of tuition and related services, including special transportation; and (3) any such other relief that the Court deems just, equitable, and appropriate."  Dkt. 26 ("Pl. SJ Br.") at 1.  With respect to the request for the Court to order funding at iBRAIN for the 2022-2023 school year, Mondano argues that SRO Bates's holding that Mondano "can only receive 'reimbursement' from the district after

---

[3] SRO Bates did not make such a finding.  Rather, in clarifying the scope of issues properly before the IHO, SRO Bates explained that there were no procedurally proper allegations in Mondano's July 6, 2022 Due Process Complaint Notice that the district denied L.M. a FAPE during the tail end of the 2021-2022 school year (after Mondano unilaterally enrolled L.M. at iBRAIN).  Administrative Record at 21-22.  SRO Bates thus explained that "the parent's allegations that predate the projected implementation date of the May 2022 IEP will not be further discussed."  *Id.*  In any event, Mondano no longer mentions this claim in his summary judgment briefing.  *See generally* Dkt. 29.

[4] In his opening brief, Mondano refers to the 2022-2023 school year in connection with L.M.'s pendency placement.  The Court assumes that the reference to the 2022-2023 school year in this context is in error, although the Court notes that Mondano consistently refers to the 2022-2023 school year with regard to pendency in his opening brief.  *See, e.g.*, Pl. SJ. Br. at 25 ("The Plaintiff also requests an Order finding iBRAIN to be L.M.'s pendency placement for the 2022-2023 SY.").  But in his opposition and reply brief, Mondano asserts that "the only issues to be decided by this Court are (1) whether Impartial Hearing Officer ('IHO') Chak and SRO Bates erred in refusing to find iBRAIN was L.M.'s pendency placement for the rest of the *2021-2022* [school year]" and "(2) whether SRO Bates erred in ordering DOE to pay for L.M.'s education placement/program at iBRAIN during the *2022-2023* [school year]" through reimbursement, rather than direct payment.  Dkt. 31 at 2 (emphases added).

providing proof of payment . . . contradicts those cases in the Southern District of New York that have found it proper in some IDEA cases to order retroactive direct funding." *Id.* at 21; *see id.* ("Nothing in [the] relevant case law creates an explicit requirement for Parents to show an inability to pay to get funding.").   Defendants cross-moved for summary judgment on the same issues, asking the Court to affirm the administrative officers' decisions on pendency for the 2021-2022 school year, and on reimbursement—not direct retroactive payment to iBRAIN—as the appropriate form of payment for L.M.'s attendance at iBRAIN during the 2022-2023 school year. Dkt. 30 ("Defts. SJ & Opp. Br.").   On May 27, 2023, Mondano filed his reply and opposition to the Defendants' motion, Dkt. 31, and the Defendants replied two weeks later, Dkt. 32 ("Defts. Reply").[5]

## II.  Legal Standard

In IDEA cases, the usual summary judgment standards do not apply.  *See, e.g.*, *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377-78 (S.D.N.Y. 2006).   Instead, summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment."   *See Arlington Cent. Sch. Dist. v. D.K. & C.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).   When reviewing administrative decisions under the IDEA, a federal district court considers the record and any additional evidence the parties submit

---

[5] Defendants contend that Mondano's seventeen-page opposition and reply brief exceeds the ten-page limit for reply briefs set forth in Rule 2(B) of the undersigned's Individual Rules and Practices in Civil Cases.  *See* Defts. Reply at 3.  Defendants thus have moved to strike the seven excess pages.  *Id.*  But that brief does not violate the 25-page limit for opposition briefs, as also set forth in Rule 2(B).  Defendants' motion to strike is therefore denied.

and bases its determination on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C); *T.P.*, 554 F.3d at 252.  Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief.  *Carter*, 510 U.S. at 12.

Courts do not, however, have free reign in such actions.  "The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy."  *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks and brackets omitted).  Typically, the court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotations marks omitted).  But where the challenged administrative determination implicates a pure legal question, the Court owes no deference to the underlying ruling.  *See Montalvan v. Banks*, No. 22 Civ. 8541 (PAE), 2023 WL 8720296,  at *8 (S.D.N.Y. Dec. 18, 2023) (citing *Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997) and *Lillbask* , 397 F.3d at 93-94).

### III.  Discussion

The parties have raised two issues in their cross-motions for summary judgment.  The first concerns IHO Chak's determination, affirmed by SRO Bates, that L.M.'s pendency placement during the 2021-2022 school year was iHOPE.  *See* Pl. SJ Br. at 10-20; Defts. SJ & Opp. Br. at 7-11.  The second concerns SRO Bates's determination that Mondano was not entitled to direct retroactive payment—only reimbursement—of the costs of tuition and related services for L.M.'s

attendance at iBRAIN during the 2022-2023 school year.  *See* Pl. SJ Br. at 21-25; Defts. SJ & Opp. Br. at 19-22.  Mondano seeks reversal of these determinations.  Defendants seek affirmance.

## A.   L.M.'s Pendency Placement at iHOPE for the 2021-2022 School Year

First, IHO Chak and SRO Bates correctly determined that L.M.'s pendency placement during the 2021-2022 school year under the IDEA's stay-put provision was iHOPE.

As described above, the IDEA's stay-put provision entitles children with disabilities to "remain in the[ir] then-current education placement" at public expense "during the pendency of any proceedings."  20 U.S.C. § 1415(j).  The Second Circuit has interpreted this provision "to require a school district 'to continue funding whatever education placement was last agreed upon [by the parents and the school district] for the child until the relevant administrative and judicial proceedings are complete."  *Ventura de Paulino*, 959 F.3d at 531 (internal quotation marks omitted).  In other words, the stay-put provision "seeks to maintain the educational status quo while the parties' dispute is being resolved."  *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.2d 145, 152 (2d Cir. 2014).  The provision operates, "in effect, [as] an automatic preliminary injunction," "substitut[ing] an absolute rule in favor of the status quo" for a court's discretionary consideration of the typical preliminary injunction factors of irreparable harm, the likelihood of success on the merits, and the balance of hardships.  *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

Under the IDEA, an initial placement is made by the school district in collaboration with and upon the consent of the child's parents.  *Ventura de Paulino*, 959 F.3d at 532.  Of course, that placement is subject to change.  For instance, a school district and the child's parents may simply agree on a new placement.  *Id.*  If the school district and the child's parents cannot agree on a new placement, the parents may challenge the adequacy of the IEP and unilaterally change their child's

placement.  *Id.*  If the IHO or the SRO finds the parents' unilateral placement appropriate by adjudicating the IEP dispute in the parents' favor under the *Burlington-Carter* test *and* the school district chooses not to appeal the decision, then the City has "consented, by operation of law," and that placement is considered the "last agreed upon placement."  *Id.*  "Accordingly, implicit in the concept of 'educational placement' in the stay-put provision (*i.e.*, a pendency placement) is the idea that the parents and the school district must agree either expressly or as impliedly by law to a child's educational program."  *Id.*

Here, Mondano insists that pendency for the 2021-2022 school year lay in iBRAIN.  *See* Am. Compl. ¶ 129.  The Court disagrees.

On July 6, 2022, when Mondano filed the due process complaint notice challenging the May 2022 IEP, the "then-current educational placement" was iHOPE, pursuant to the October 19, 2022 IHO decision that the City declined to appeal.  Mondano recognizes this.  Administrative Record at 164 (Mondano explaining in the July 6, 2022 Due Process Complaint Notice that "the 'last agreed-upon placement' [for L.M.] is found in the Findings of Fact and Decision . . . dated October 19, 2021").  This determination as to the "last agreed upon" placement concludes this Court's analysis under Section 1415(j).

Mondano nonetheless asks this Court to declare that the "last agreed upon" placement at the time he challenged L.M.'s May 2022 IEP was iBRAIN and thus to order the DOE to pay for L.M.'s cost of attendance at iBRAIN for the relevant portion of the 2021-2022 school year, Pl. SJ Br. at 14-16, even though the DOE had neither expressly nor impliedly by law consented to iBRAIN as L.M.'s placement at that time.  Mondano's intractable pursuit of payment in this vein follows the very course proscribed by the Second Circuit in *Ventura de Paulino*.

There, the plaintiffs, parents of children with disabilities, unilaterally enrolled their children at iHOPE for the 2017-2018 school year, filed due process complaints alleging that their children's public school placements were inadequate, and were deemed in the administrative proceedings to be entitled to reimbursement from the City for tuition for that school year. *Ventura de Paulino*, 959 F.3d at 527. In June 2018, following the reimbursement orders, which the City did not appeal, the plaintiffs unilaterally enrolled their children at iBRAIN for the 2018-2019 school year. *Id.* On July 9, 2018, the children's first day at iBRAIN, the plaintiffs filed due process complaints seeking orders, pursuant to the IDEA's stay-put provision, directing the City to fund the children's placement at iBRAIN during the pendency of their due process proceedings. *Id.* When the IHOs declined, the plaintiffs immediately turned to the courts. *Id.* But when the issue reached the Second Circuit, the Second Circuit held:

> [A] parent cannot . . . determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis. To hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services should be provided.

*Id.* at 534. Yet that is *precisely* what Mondano seeks to do here.

Mondano urges that the instant circumstances are distinguishable, however, based on the "unavailability" of iHOPE as a placement for L.M., and invokes the Second Circuit's *dicta* in footnote 65 of *Ventura de Paulino*. *See, e.g.*, Pl. SJ. Br. at 6-7 ("The IHO disregarded the exception carved out by footnote 65 in *Ventura de Paulino* and found that there are no exceptions when the then-current educational placement is unavailable."). In footnote 65, the Second Circuit commented:

> We do not consider here, much less resolve, any question presented where the school providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child. Those

circumstances are not present here.  We note, however, that at least one of our sister Circuits has acknowledged that, under certain extraordinary circumstances not presented here, a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii).  *See Wagner v. Bd. of Educ. of Montgomery C[n]ty.*, 335 F.3d 297, 302-03 (4th Cir. 2003) (involving a situation in which the pendency placement was no longer available, and the school district had failed to propose an alternative, equivalent placement).[6]

*Ventura de Paulino*, 959 F.3d at 545 n.65.

Initially, as this Court interprets that footnote, the Second Circuit was leaving open the availability of the plaintiffs' requested relief—that is, a change in pendency through judicial intervention—not under the IDEA's stay-put provision, but rather under the IDEA provision empowering a district court to "grant such relief as the court determines is appropriate" in the exercise of its equitable authority, 20 U.S.C. § 1415(i)(2)(C)(iii).  *See L.G. v. N.Y.C. Dep't of Educ.*, 23 Civ. 9268 (JPO), 2023 WL 8044937, at \*3-5 (S.D.N.Y. Nov. 3, 2023) (granting the plaintiff's request for a temporary restraining order and preliminary injunction under "20 U.S.C. 1415(i)(2)(B)(iii)" to fund the parents' unilaterally selected placement, where the initially agreed-upon placement was unavailable and where the DOE's proposed interim placement did not satisfy the child's IEP.  Indeed, IHO Chak and SRO Bates shared in this understanding, both explicitly opining on the inappropriateness of Mondano's request for relief as asserted under Section 1415(j) and indicating a potential avenue of relief through Section 1415(i)(2)(C)(iii).  *See* Administrative Record at 26 (SRO Bates explaining that Mondano "may seek a preliminary injunction requesting a change in [L.M.]'s education placement, an injunction for which the parent 'bears the burden of

---

[6]  In *Wagner*, the Fourth Circuit determined that an educational placement's "unavailability" is not a relevant consideration in disputes arising under the IDEA's stay-put provision at Section 1415(j).  335 F.3d at 301 ("In other words, the question of availability is entirely irrelevant to the task of identifying the child's then-current educational placement, and it is only the current placement, available or unavailable, that provides a proper object for a 'stay put' injunction.").

demonstrating entitlement to such relief under the standards generally governing requests for preliminary injunction relief'" (quoting *Wagner*, 335 F.3d at 302)), 62 (IHO Chak explaining that "[t]o get an alteration in placement for the period April 25, 2022 to June 27, 2022 Parent and District would have to have come to an agreement, or Parent would have to seeks [sic] an injunction or determination from court" and referencing "section 1415(i)(2)(B)(iii)").  Despite this express guidance, Mondano declined to move this Court for a preliminary injunction under Section 1415(i)(2)(C)(iii), a provision whose mention is glaringly absent from the initial Complaint and the Amended Complaint, instead opting to pursue relief under Section 1415(j).  *See generally* Orig. Compl.; Am. Comp.; *see also* Am. Compl. ¶ 11 (stating that "the Plaintiff seeks a Preliminary Injunction under § 1415(j)").[7]

---

[7] In moving for summary judgment, Mondano seemingly attempts to rewrite his Amended Complaint, vaguely alluding several times to this Court's equitable authority under Section 1415(i)(2)(C)(iii).  *See, e.g.*, Pl. SJ Br. at 1 (indicating that his summary judgment motion is made "pursuant to the Individuals with Disabilities Education Act ('IDEA')[,] 20 U.S.C. § 1400, *et seq.* and concomitant regulations, including but not limited to § 1415(i)(2)(C) and § 1415(j)), 15 (referring to this Court's "discretion to grant a preliminary injunction under 20 U.S.C. § 1415(i)(2)").  Of course, a plaintiff may not raise a claim for the first time in his summary judgment briefing.  *See Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2011) (explaining that a plaintiff may not raise a claim for the first time in an opposition to a summary judgment motion, given that, under Federal Rule of Civil Procedure 8, a "claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim").  But even were the Court to consider Mondano's request for a preliminary injunction under Section 1415(i)(2)(C)(iii) at this juncture, such request would be denied for Mondano's failure to demonstrate imminent, irreparable injury or a balance of equities in favor of his requested relief.  *See L.B. by & through S.B. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 9356 (MKV), 2022 WL 220085, at *4 (S.D.N.Y. Jan. 25, 2022) ("An application for a preliminary injunction under [Section] 1415(i)(2)(C)(iii) is governed under the familiar equitable relief standard.  To obtain a preliminary injunction, the movant must show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." (internal quotation marks omitted)).  Aside from proclaiming in his Amended Complaint that he "meets such requirements," Am. Compl. ¶ 11, Mondano has made no attempt to sustain his burden of showing the appropriateness of injunctive relief.

The distinction between the stay-put provision at Section 1415(j), and the provision delineating this Court's equitable authority at Section 1415(i)(2)(C)(iii), extends beyond mere labels.  As the Fourth Circuit emphasized in *Wagner*, a stay-put injunction is "automatic," whereas a party seeking an injunction under Section 1415(i)(2)(C)(iii) bears the burden of "demonstrating entitlement to such relief under the standards generally governing requests for preliminary injunctive relief."  335 F.3d at 302.  "That more is required to effect a change in placement . . . than the maintenance of placement . . . is consistent with the presumption created by Congress that a child should remain in the then-current educational placement."  *Id.*  Here, in requesting a *change* in placement through the IDEA's stay-put provision, Mondano attempts to "transform[] a tool for preserving the status quo into an implement for change."  *Id.*  This Court declines to entertain such a perversion of Section 1415(j).  And Mondano simply cannot rely on the Second Circuit's gesturing toward a potential avenue of relief under Section 1415(i)(2)(C)(iii) to support his claim for relief under Section 1415(j).

Mondano's reliance on footnote 65 in *Ventura de Paulino* fails for an alternate, independent reason.  The "extraordinary circumstances" alluded to in *Ventura de Paulino* plainly are not present here.  In that footnote, the Second Circuit contemplated a scenario both "where the school providing the child's pendency services is no longer available" and the school district "refuses or fails to provide pendency services."  *Ventura de Paulino*, 959 F.3d at 545 n.65. Mondano contends that iHOPE became "constructively unavailable" after the school purportedly "filed a baseless educational neglect case against L.M.'s [p]arents" after they "voice[d] concern about different aspects of L.M.'s education program."  Pl. SJ Br. at 9, 10.  While, if true, those allegations, the gravity of which the Court does not seek to minimize, undoubtedly would be troubling, it is hardly clear that they would have rendered L.M.'s attendance at iHOPE unavailable.

And even if Mondano were somehow able to show "constructive[] unavailab[ility]" for his daughter at iHOPE, he does not claim any refusal or failure to provide pendency services on the part of the DOE for the 2021-2022 school year. He faults the DOE for failing to respond to the April 5, 2022 Notice, in which his counsel simply notified the DOE that L.M.'s parents would be enrolling her at iBRAIN starting on April 25, 2022—with no invitation for response, no request for a meeting, and no explanation for the decision other than they "ha[d] no choice," *see* Administrative Record at 220-21. Pl. SJ. Br. at 10.[8] The DOE's decision not to respond to that letter, which did not request an alternative placement and even appeared to foreclose any input on the matter, does not constitute a "refusal or failure to provide pendency services." *Cf. Scheff v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 7579 (PAE), 2023 WL 4211117, at *8 (S.D.N.Y. June 27, 2023) (rejecting the plaintiff's argument that the City was obliged to fund her child's placement under the "exception" noted in footnote 65 of *Ventura de Paulino* because the plaintiff had "not shown that the City failed or refused to provide pendency services").

In sum, the discussion in *Ventura de Paulino* in footnote 65 has no bearing on Mondano's requested relief, which is expressly foreclosed by that decision. Accordingly, the Court grants summary judgment in favor of the City on this issue.

## B. Reimbursement for the 2022-2023 School Year

Next, Mondano seeks reversal of the SRO's denial of Mondano's request for direct retroactive payment to iBRAIN for the 2022-2023 school year, based on Mondano's failure to

---

[8] Mondano also complains that when he sent his ten-day notice (presumably referring to his June 17, 2022 notice) to the DOE, the DOE "failed to send a prior written notice or a school location letter to recommend a public placement for L.M. for the 2022-2023" school year. Pl. SJ. Br. at 16. The Court strains to discern the relevance of this statement to whether the DOE failed to provide L.M. with pendency services during the 2021-2022 school year, which is, once again, the relevant school year for purposes of Mondano's pendency challenge.

provide any evidence of his financial inability to pay the costs of iBRAIN tuition first and seek reimbursement later.  Pl. SJ. Br. at 21-25.  Defendants contend that SRO Bates's requirement that Mondano show financial hardship in connection with a request for direct retroactive payment was appropriate.  Defts. SJ & Opp. Br. at 19-22.  The issue of whether relief in the form of direct retroactive payment may be contingent on a showing of an inability to pay is a question of law subject to this Court's *de novo* review.  *Montalvan*, 2023 WL 8720296, at *8 (citations omitted).

The Court sets forth a brief summary of relevant jurisprudence delineating the scope of remedies available under Section 1415(i)(2)(C)(iii), which, once again, empowers courts to grant "such relief" as they "determine[] is appropriate."  First, in its seminal 1985 decision in *Burlington*, the Supreme Court held that, pursuant to that provision, courts possess

> the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the [IDEA].

471 U.S. at 360.  Eight years later, in *Carter*, the Supreme Court unanimously reaffirmed the availability of such a reimbursement remedy, rejecting in that decision efforts to limit the scope of the remedy to reimburse only placements in private schools that had been approved by the state. 510 U.S. at 14-15.  At that time—that is, before the 1997 Amendments to the IDEA—the IDEA lacked explicit language authorizing a tuition reimbursement remedy.  After the 1997 Amendments added an express provision setting forth conditions under which courts should order reimbursement for unilateral private school placements, *see* 20 U.S.C. § 1410(a)(10)(C), the Supreme Court declined to interpret the inclusion of such a provision as limiting the remedy provided in Section 1415(i)(2)(C)(iii) or undermining its holdings in *Burlington* and *Carter*.  *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) ("The IDEA Amendments of 1997 did not modify the text of § 1415(i)(2)(C)(iii), and we do not read § 1412(a)(10)(C) to alter that

provision's meaning.  Consistent with our decisions in *Burlington* and *Carter*, we conclude that

IDEA authorizes reimbursement for the cost of private special-education services when a school

district fails to provide a FAPE and the private-school placement is appropriate, regardless of

whether the child previously received special education or related services through the public

school.").

The Second Circuit later determined "that the broad spectrum of equitable relief

contemplated under the IDEA encompasses, in appropriate circumstances, a 'direct-payment'

remedy," explaining:

> Indeed, where the equities call for it, direct payment fits comfortably within the
> *Burlington-Carter* framework: like reimbursement, direct payment to the private
> school that provided the required educational program merely requires [the school
> district] to belatedly pay expenses that it should have paid all along and would have
> borne in the first instance had it developed a proper IEP.

*E.M.*, 758 F.3d at 453-54 (internal quotation marks omitted).  Accordingly, the parties in the instant

matter do not dispute that direct payment is available as relief under Section 1415(i)(2)(C)(iii).

Rather, they dispute whether SRO Bates appropriately made the award of such relief contingent

on proof of Mondano's inability to afford in the first instance the costs of L.M.'s attendance at

iBRAIN.

It is true that a parents' inability to pay tuition costs upfront has factored in some judges'

exercise of their authority under Section 1415(i)(2)(C)(iii) to order direct payment as relief.  *See,*

*e.g.*, *A.R. ex rel. F.P. v. N.Y.C. Dept. of Educ.*, No. 12 Civ. 4493 (PAC), 2013 WL 5312537, at *11

(S.D.N.Y. Sept. 23, 2013) (accepting the "undisputed evidence that [the plaintiff] could not afford

to pay the tuition" and granting relief in the form of a direct payment); *Mr. & Mrs. A*, 769 F. Supp.

2d at 428 ("Where, as here, parents lack the financial resources to 'front' the costs of private school

tuition . . . parents who satisfy the *Burlington* factors have a right to retroactive direct tuition

payment relief."). Indeed, a direct retroactive payment remedy ensures that the IDEA's protections are not limited only to those children whose parents have the means to "front" the costs of their child's private school tuition before seeking reimbursement in a due process hearing. *See Mr. & Mrs. A*, 769 F. Supp. 2d at 428 ("Limiting the right of unilateral withdrawal, only to those with the financial means to pay the costs of private school tuition in the first instance, is entirely antithetical to IDEA's universal guarantee of a free, appropriate public education to all children with disabilities, regardless of means." (internal quotation marks omitted)). But this Court is not aware of any court that has directly imposed a financial hardship requirement for a direct payment remedy. Rather, "[t]he consistent message of this District's decisions is that a child's access to a FAPE 'cannot be made to depend on his or her family's financial ability to "front" the costs of private school tuition.'" *Cohen v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6260 (MKV), 2023 WL 6258147, at *5 (S.D.N.Y. Sept. 26, 2023) (quoting *Mr. & Mrs. A*, 769 F. Supp. 2d at 406). The Court thus declines to affirm the SRO's imposition of such a financial hardship requirement here.

In holding that the SRO erred in denying Mondano's request for direct retroactive payment, the Court notes that SRO Bates had first determined that the equitable considerations under the *Burlington-Carter* test "weigh[ed] in favor of the parent's requested relief," *i.e.*, direct retroactive payment. Administrative Record at 38. Indeed, SRO Bates found that the "district ha[d] not raised any equitable considerations that would warrant a reduction or denial of the parent's requested tuition reimbursement," and concluded found that Mondano's participation in the May 2022 CSE meeting and his timely notice of his intent to unilaterally place L.M. at iBRAIN weighed in favor of Mondano's requested relief. *Id.* But in determining whether to grant Mondano's request for direct retroactive payment, the SRO applied a rigid requirement that Mondano demonstrate financial hardship. *Id.* at 38-39. Finding that Mondano had failed to meet this requirement, the

SRO mechanically denied the parents' request for direct retroactive payment, even though the district had not raised any countervailing interest for why its payment obligation should take the form of reimbursement. *Id.* at 39.

The Court thus finds that the SRO's determination, inasmuch as it hinged entirely on the absence of the evidence concerning Mondano's financial ability to pay for the tuition upfront, was in error. *See Cohen*, 2023 WL 6258147, at *4-6 (holding that the SRO erred in finding that the direct retrospective payment to the unilateral placement for the student's tuition and related services was contingent upon proof of the parents' inability to pay); *Ferreira v. N.Y.C. Dep't of Educ.*, Nos. 22 Civ. 4993 (AT), 21 Civ. 11087 (AT), 21 Civ. 6012 (AT), 20 Civ. 9849 (AT), 2023 WL 2499261, at *9-10 (S.D.N.Y. Apr. 14. 2023) (same).

But, to be clear, the Court does not express any opinion on whether an administrative officer, in considering a request for direct retroactive payment, may properly balance a parent's financial status against countervailing interests raised by the school district, such as an objection to the reasonableness of the cost of tuition or any other considerations that may legitimately drive a preference for reimbursement as the form of payment. *See Ferreira*, 2023 WL 2499261, at *10 ("Moreover, where it is undisputed that the DOE is responsible for payment, *and the DOE does not contest the reasonableness of the cost of tuition*, it would be nonsensical to draw a distinction on equitable grounds between requiring the DOE to pay the school directly and forcing the parents to make an initial payment in the same amount that the DOE is then required to reimburse." (emphasis added)).   Rather, the Court's holding is limited to the precise circumstances presented here, where the SRO determined that all equitable factors otherwise weighed in favor of the parent, yet nonetheless refused the parent's request that the school district's payment obligation take the form of direct retroactive payment after imposing a rigid financial hardship requirement.

On this issue, the Court thus grants Mondano's motion for summary judgment and denies Defendants' cross-motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the issue of pendency for the 2021-2022 school year and otherwise denied.  Mondano's motion for summary judgment is granted as to his request for the school district's direct retroactive payment for tuition and related services for the 2022-2023 school year and otherwise denied.

Mondano may file a motion for reasonable attorneys' fees and costs, together with supporting documentation, by April 26, 2024.  Defendants shall file any opposition and objections to that motion by May 10, 2024.  After resolving Mondano's fees motion, the Court will render its final judgment.

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 25 and 29.

SO ORDERED.

Dated: March 30, 2024
New York, New York

JOHN P. CRONAN
United States District Judge

26